[Crim. No. 668.  Second Appellate District, Division One.—July 29, 1919.]

## THE PEOPLE, Respondent, v. THOMAS F. LUTTRELL, Appellant.

[1] CRIMINAL LAW—MURDER—DEGREE OF CRIME—EVIDENCE—PROVINCE OF APPELLATE COURT.—The appellate court, though it may conclude after examining the testimony introduced at the trial in a prosecution for murder that had it the duty to try the question anew upon the evidence, it would be most apt to conclude that the defendant's crime, considering the extreme provocation under which he acted, was not greater than that of manslaughter, it has no function to perform in the way of re-examining the facts, except in so far as it may be necessary to consider them in determining the matters of law which are the only subjects entitled to be reviewed on appeal.

[2] ID.—SELF-DEFENSE—INSTRUCTIONS.—In this prosecution for murder, the court having fully instructed the jury that if the defendant believed as a reasonable man that he was about to suffer great bodily injury at the hands of the man whom he killed, he was justified in using his deadly weapon and killing his antagonist, did not commit error in refusing to give the instructions on the law of self-defense as requested by the defendant.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Farnsworth, McClure & Burke for Appellant.

U. S. Webb, Attorney-General, and Joseph L. Lewinsohn, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of murder in the second degree. The appeal is taken from the judgment of imprisonment which followed the conviction, and also from an order denying defendant's motion for a new trial.

On the tenth day of December, 1918, at the town of Lemon Cove, county of Tulare, an altercation occurred between defendant and Vernon French, a young man about the age of twenty-one years. French was killed by being shot by appellant. At least three bullets were fired into the body of French. French at the time was unarmed. From this brief preliminary statement it might be inferred that the shooting of French by appellant was an act of wanton and deliberate murder. But from what will be stated immediately hereinafter it will appear that the appellant only shot after he had been annoyed, abused, and cursed upon his own premises; that he had sought to avoid a physical encounter with French, who was there with the evident purpose of provoking and engaging in a fist-fight with appellant; that the deceased not only abused and vilified the appellant, but, after challenging him to a fist-fight, called him a coward and dared him to shoot. [1] To this further statement we may here add, after carefully examining the testimony introduced at the trial, that had this court the duty to try the question anew upon the evidence, we would

42 Cal. App.—29

be most apt to conclude that defendant's crime, considering the extreme provocation under which he acted, was not greater than that of manslaughter. However, we have no function to perform in the way of re-examining the facts, except in so far as it may be necessary to consider them in determining the matters of law which are the only subjects entitled to be reviewed on this appeal.

The main points urged on the part of the appellant are that the refusal of the court to give certain offered instructions was error. It will be appropriate to make a further statement more fully showing the facts affecting the circumstances of the shooting: The appellant at the time of the alleged homicide resided at the town mentioned with his family; he was engaged in operating stages from that point to the Sequoia National Park. In the operation of this business he used automobiles and carried passengers and mail. The deceased, French, had been employed by him, but on the day preceding that of his death had refused, during the absence of appellant, to convey three passengers who desired transportation to a grading camp. For that reason appellant had discharged him the following morning, through the mouth of another person, to whom he gave the wages due to French and which were apparently delivered by the messenger. Some days prior, while making change with a customer, appellant had borrowed fifty cents from French. On the morning of the tragedy appellant brought a truck into the barn or garage used and owned by him, for the purpose of having a mechanic make some small repairs thereon. This mechanic operated a garage near by and had just returned to appellant's place with another machine upon which he had been working. Up to this point there appears to be no dispute in the facts—there is little dispute made at all in the case, except as to the final actions of French immediately before he was shot. To that matter we will advert later. The main story, as told by an eye-witness, was that after appellant came in with the truck and dismounted therefrom, French appeared inside the door of the building; that appellant approached him and that French said to appellant: "When are you going to pay me that four bits?" that appellant asked, "What four bits?" and was then reminded of the fifty cents which French had loaned to him; that appellant immediately replied he had forgotten that, that he would pay it; without more ado

French, after the introductory question, "You know what I think of you?" began to curse appellant and to apply to him the vilest epithets which his vocabulary afforded, and it appeared that his command of language was not at all restricted in that direction; French advanced toward appellant, whereupon appellant drew a revolver and pointed it at French and retreated from him; French took off his coat, laid it down, and dared appellant to come outside and fight; the challenge to fight was repeated and he followed after appellant, who retreated toward the rear of the building, pistol in hand, until he reached the wall; he went through a rear door, which was a swinging contrivance, and disappeared from the sight of the eye-witness within the building; French hesitated a moment and followed after him, but nothing more was heard outside. By appellant's testimony it appears that he went home and procured from his wife the fifty cents owing to French and returned with it; at any rate, the eye-witness soon saw French reappear at the front door and shortly thereafter appellant came in and offered him the fifty cents; again French entered upon his tirade, cursing the appellant, calling him again vile and unmentionable names, and again appellant drew his pistol, which he pointed at French. This time, it can be gathered that appellant moved toward French and that French moved toward and through the front door of the building. While these actions were being performed appellant was telling French that he wanted him to go away, that he wanted nothing to do with him, and wanted him to leave his premises. It may be here said, too, that appellant had, before retreating through the rear door, requested French to leave; also that, when being cursed by the deceased, he had returned the compliment by calling him names of similar character to those first used by French. As the eye-witness observed, after French had retreated through the door, his general action was to move away from appellant; that after he got through the door he dared appellant to shoot, telling him that he was afraid to shoot, that he had "a streak of yellow" in him. Thereupon the appellant, standing at the door, declared that he was not afraid to shoot and that he would shoot, and thereupon he fired several shots, at least three, all of which apparently took effect in the body of French, as a result of which wounds he

died in a hospital not long after. The only substantial difference in the testimony as between the witnesses for the prosecution and the defendant was that the defendant testified that after French had retreated through the front door he again advanced upon him (appellant) in a threatening manner and that he (appellant) believed that French was again about to attack him; that so believing, he fired the fatal shots.

[2] The appellant relied for his exoneration upon the claim that he acted in necessary self-defense. This claim was given very full presentation to the jury by instructions as read by the court. We have made a particularly close examination of those instructions and we think that they were not only fair, but exceedingly full, and prepared with a view to thoroughly cover the case. As we read them, they present a full exposition of the law touching the matter of self-defense. Instructions were not wanting in the advice to the jury that if the defendant believed as a reasonable man that he was about to suffer great bodily injury at the hands of French, he would be justified in using his deadly weapon and killing his antagonist. The crime of murder and its degrees were carefully analyzed by the court, as was the offense of manslaughter included therein. To say that the jury would have been altogether justified under the evidence in returning a verdict of guilty of manslaughter, instead of murder of the second degree, does not help the case of appellant on this appeal at all. It was for the jury to determine the degree or character of crime which had been committed. Evidently it concluded, as it had a right to do under the evidence, that French was in retreat and was going away and had abandoned the quarrel when he was shot and killed. There was evidence, as we have noted, to fully sustain such a verdict. On the other hand, had the jury concluded, as appellant insisted, that French was advancing upon him, threatening him with an assault, and that he feared great bodily harm at the hands of deceased, then a verdict of acquittal would have no doubt been rendered. If it had concluded that there was no deliberate intent involved in the act, but that appellant shot upon a sudden and unpremeditated impulse of passion, a verdict of manslaughter might have been rendered. We think it unnecessary to here repeat the

text of the instructions given by the court in the lengthy charge delivered. It will ·suffice to state again that that charge seems to us to completely cover the case and to present fully all of the propositions important to the appellant's defense. The instructions refused and for which error is claimed either contained matter sufficiently covered by the charge given by the court, or contained matter not clearly material to a sufficient exposition of the law as applied to the case.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.